# EXHIBIT 1

IN THE CIRCUIT COURT OF COOK COUNTY
COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| MICHAEL and CHRISTINE MIKSIS, on behalf of JOHN MIKSIS,<br><br>Plaintiff,<br><br>vs.<br><br>EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT # 202<br><br>Defendant | 2012L011419<br>CALENDAR/ROOM U<br>TIME 00:00<br>Breach of Contract<br><br>Case No.:<br><br>Amount claimed: $118,925,.00 plus<br><br>Reimbursable expense, attorney's fees and costs |

## COMPLAINT FOR BREACH OF CONTRACT

Now come the plaintiffs, by and through their attorney, Steven Glink and complaining against the defendant, and state as follows:

### FACTS COMMON TO ALL COUNTS

1. At all times relevant to this complaint, John Miksis was a student at Evanston Township High School ("ETHS") eligible for special education under the IDEA, 20 USC 1400, et seq..

2. At all times relevant to this complaint, Michael and Christine Miksis are/were John's biological parents.

3. John Miksis is 21 years old but has transferred his rights to make his educational decisions to his parents.

4. At all times relevant to this complaint, as required by the IDEA, ETHS had the legal duty to provide John Miksis with a free appropriate public education.

5. In 2004, the parents filed a due process hearing request to contest the validity of the district's placement decision.

6. In 2005, the parents filed a federal lawsuit (05 C 6720) to contest John's IEP placement and transition planning.

7. On July 17, 2009, the parents and the district entered into a settlement agreement to resolve the dispute (a copy of said agreement is attached hereto as exhibit A).

8. At or near the time that the parties entered into the above-referenced settlement agreement, the parties agreed to a "transition plan" to address John's post-high school development (a copy of said plan is attached hereto as exhibit C).

9. Shortly after the date that the agreement was signed by both parties, the district placed John at Orchard Academy ("OA") to implement the agreement and the transition plan.

10. OA placed John in their in-house life skills program, which did not emphasize the academic component of the transition plan.

11. Shortly after the district placed John at OA, the parents objected/ to and contested the various placement/ transition decisions made by the district. The district ignored the parents' objections and disagreements.

12. Despite their beliefs that the district's placement/ transition planning decisions did not comply with the express terms of the settlement agreement and/or the transition plan, and despite their belief that the district's placements were inappropriate to meet John's needs, the parents did allow John to participate in those placements.

13. On September 18, 2009, the parents sent a letter to the district (a copy of which is attached as exhibit B) informing the district of their disagreement with the district's placement/ transition decisions. The letter further informed the district of their intent to place John in an alternative placement that was appropriate to meet John's educational needs. The district never responded to this letter.

-2-

14. After the settlement agreement was written, the parents enrolled John at Oakton Community College to take various academic courses as per the transition plan. John remained as a student at OCC until the end of the Spring 2010 semester.
15. Per the settlement agreement, the parents then attempted to enroll John in the PACE program at National Louis University in Skokie, Illinois.
16. On information and belief, the parents allege that Dr. Maria Smith, special education director for the district, convinced PACE not to accept John into their program.
17. No matter what the reason, PACE refused to accept John into their program.
18. The parents sought assistance from the district for an alternative (to PACE) transition placement for John. The district refused to find an appropriate program.
19. In the Fall of 2010, the parents placed John at the Elmhurst Learning and Success Academy ("ELSA") because that was the only program that was comparable to the PACE program called for in the settlement agreement. The district refused to support that placement.
20. Since the date of that placement until the present, John's educational and transition needs have been met at the ELSA.
21. The parents have sustained financial loss as a result of the defendant's breach of the settlement agreement. They have paid for tuition at OCC and ELSA. They have had to pay for and/or provide transportation, which is a related service under the law. They have had to pay for other reimbursable expenses as well.
22. Under 34 CFR 300.510(d) (2), State courts have jurisdiction to enforce breach of settlement agreements under the IDEA.
23. The IDEA has a fee shifting provision that allows the parents to recoup their reasonable attorney's fees if they are declared to be the prevailing parties.

Wherefore, plaintiff respectfully prays that this Honorable Court enter judgment against the defendant in the amount of $118,925.00 plus all legally reimbursable expenses, the costs of filing this suit and reasonable attorney's fees pursuant to paragraph 6 of the agreement.

Respectfully submitted,

_/s/ Steven E. Glink_

Steven E. Glink

Law Offices of Steven E. Glink, # 16602
Pro Se Attorney for Plaintiff
3338 Commercial Avenue
Northbrook, Illinois 60062
847/480-7749 (voice)
847/480-9501 (facsimile)

## SETTLEMENT AGREEMENT AND RELEASE

**THIS AGREEMENT** (the "Agreement") is made and entered into by and between MICHAEL MIKSIS AND CHRISTINE YUELYS-MIKSIS (hereinafter "Parents") individually and on behalf of their son, JOHN MIKSIS (hereinafter "John"), JOHN MIKSIS, the BOARD OF EDUCATION OF EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT 202, EVANSTON TOWNSHIP HIGH SCHOOL DISTRICT 202 and ERIC WITHERSPOON, its Superintendent. The Board of Education, District 202, and Dr. Witherspoon are collectively referred to hereinafter as the "District." The parents, John, and the District are collectively referred to hereinafter as the "parties."

**WHEREAS,** the parties hereto are or have been parties to a due process administrative hearing, followed by a lawsuit that is pending in the United States District Court for the Northern District of Illinois, known as *John M., by his parents and next friends, Christine M. and Michael M., and Christine M. and Michael M., v. Board of Education of Evanston Township High School District 202, Evanston Township High School District 202, and Eric Witherspoon, Superintendent, sued in his official capacity,* Case No. 05 C 6720 (the "lawsuit"), and

**WHEREAS,** the parties, in exchange for the good and valuable promises and consideration contained herein, have agreed to compromise the lawsuit in order to avoid the expense, inconvenience and delay of further litigation, to resolve the issues raised in the lawsuit amicably, to provide for John's educational needs appropriately, to provide for John's transition to post-secondary education, employment, and independent life appropriately, and to continue with John's education cooperatively in the manner outlined herein;

408070.2



**IT IS HEREBY AGREED AS FOLLOWS:**

1.  As discussed during John's Individual Education Plan ("IEP") meeting held by the parties on May 15, 2009, the parties agree that John will attend Orchard Academy, which is presently located at 7670 Marmora Avenue, Skokie, Illinois 60077, in its intensive individualized transition program beginning August 25, 2009 at the District's expense. The parties further agree that Orchard Academy will make its own individualized assessments of John's educational, psychological, physical and life skills in order to recommend to the IEP team what John's educational goals are and to recommend to the IEP team the services, aids and therapies that John will require to accomplish those goals and move toward independent living. During the period of Orchard Academy's individual assessment of John, John will receive those aids, including but not limited to speech and occupational therapy, at the same level he received during the 2008-2009 school year (with the exception of Adapted Physical Education, which will not be provided). Within 30 days after Orchard Academy completes its assessment, the parties will meet in an IEP meeting to confirm that the assessment and educational and other goals established by Orchard Academy are consistent with John's transition goals discussed in the parties' May 15, 2009 IEP meeting and to finalize John's IEP for 2009-2010.

2.  Beginning in the Fall of 2010, it is the parties' intent that John will be enrolled in the transition education program at the Professional Assistance Center for Education, referred to as the PACE program at National Louis University (the "PACE program"), presently located at 5202 Old Orchard Road, Skokie, Illinois 60077, at the District's expense, with John continuing in the PACE program through the day before his 22nd birthday; however, it is agreed that John's enrollment in the PACE program is contingent upon the PACE program's acceptance of John into its program. If John

is not accepted into the PACE program, if he is terminated from the PACE program, or if the PACE program is terminated, the parties agree to meet to discuss and consider other appropriate placement options for John's post-secondary transition education. However, all other provisions of this Agreement shall remain in effect regardless of John's acceptance, non-acceptance or termination from or of the Orchard Academy or PACE programs.

3. Within seven (7) days of all parties executing this Agreement, the Parents shall file a motion to dismiss the lawsuit with prejudice, the parties to bear their own costs.

4. In exchange for these good and valuable promises, the parents and John waive and release the District from any and all claims for attorneys' fees and costs resulting from the lawsuit, including but not limited to claims pled in the lawsuit pursuant to Section 1415 of the IDEIA, 20 U.S.C. §1415, Section 14-8.02 of the Illinois School Code, 105 ILCS §5/14-8.02, and 42 U.S.C. §1988.

5. In exchange for these good and valuable promises, the parents and John further waive and release the District from any and all claims, demands, complaints and causes of action brought in the lawsuit, including but not limited to all claims and complaints pled in the lawsuit under the IDEIA, the School Code of Illinois, and/or their implementing regulations, the ADA and/or Section 504 of the Rehabilitation Act and/or their implementing regulations, 42 U.S.C. §1983, the United States Constitution, the Illinois Constitution, and any other federal or state statutory or common law that might apply to the issues raised in the lawsuit. As used in paragraphs 4 and 5 of this Agreement, "District" includes the Board of Education, its present and former Board members, officers, directors, employees, agents, representatives, and assigns.

6. The parties agree that the terms of this Agreement shall be regarded as strictly confidential and not be disclosed to third parties, except for their attorneys, accountants (as necessary for the preparation of income tax returns and other tax-related matters) and as may be required by law. Notwithstanding the prior sentence, John and the Parents may disclose to third parties that John is or will be enrolled in the transition program at Orchard Academy for the 2009-2010 school year and, if accepted, in the PACE program for the 2010-2011 and 2011-2012 school years.

7. This Agreement contains all the terms and conditions agreed upon by the parties and no provisions or requirements expressly determined herein may be amended, altered, modified or canceled, except by express written instrument signed and dated by all parties.

8. This Agreement is executed voluntarily by the parties without any duress or undue influence. The parties acknowledge they have been represented in the negotiations for, and in the preparation of, this Agreement by counsel of their own choices, they have read this Agreement and had it fully explained to them by such counsel and they are fully aware of the contents of this Agreement and of its legal effect.

9. This is a release and settlement of disputed claims, as provided for herein. It is understood by the parties that this settlement does not constitute an admission of liability by the District or Witherspoon or an admission by the District or Witherspoon that John's rights were violated in any way, but is entered into solely as and for a compromise settlement of such disputed claims.

**Christine Yuelys-Miksis**
*(signature)*
Dated: 7/11/09

**Michael Miksis**
*(signature)*
Dated: 7/11/09

**John Miksis**
*(signature)*
Dated: 7/11/09

**Evanston Township High School District 202 and the Board of Education of Evanston Township High School District 202**

By: *(signature)* Eric Witherspoon
Its Superintendent

Dated: 7/17/09

**Eric Witherspoon**

*(signature)*
Eric Witherspoon

Dated: 7/17/09

CHI99 5129047-2.099747.0138

408070.2

811 Central Street
Evanston, IL 60201
September 18, 2009

SENT BY FACSIMILE AND E-MAIL to PATRICIA WHITTEN, ATTORNEY

HAND-DELIVERED to:
Maria P. Smith, Ed.D, Director of Special Education
Evanston Township High School
1600 Dodge Avenue
Evanston, IL 60201-3449

Dear Dr. Smith,

I am writing to you because our attorneys are unavailable.

On September 2, 2009 I received the records contained in my son, John Miksis', file. Included in his records was a draft document that has been sent to an outside agency and it could have been mistaken as being John's current IEP. We were not involved in developing this document. I immediately wrote you a letter stating that we are not in agreement with the distribution of this document and asked that you not distribute it to anyone outside of ETHS. I followed this up with an e-mail on September 8, 2009. In response, you unilaterally and arbitrarily decided to alter John's educational program at Orchard Academy. On September 9, 2009 you ordered Orchard Academy to immediately stop providing support for John's educational program, thus removing him from the individualized Intensive Program and placing him solely in the general program. This is a denial of FAPE.

These actions are in violation of the IDEA statutes and regulations and also in violation of the agreement developed on May 15, 2009. According to our agreement, John's interim program is to continue at the same level as he received during the 2008-2009 school year. There were no changes made to this program at our meeting and no interim IEP was developed. His program during the previous school year remains in place until a new one is developed and includes the services of an OT, PT, SW and SLT, as well as a paraprofessional aide. All services and supports were previously delivered in a general education setting; at the IEP meeting it was determined that the equivalent placement during this interim period would be in the community, where John would receive his post-secondary education and vocational training on an individualized basis. Orchard Academy stated their Intensive Program allowed for them to provide these services because it included an aide dedicated to supporting the student off-site. John's support services were to be provided at the Orchard Academy site at 7669 Marmora, Skokie. This program is described in the Orchard Academy Handbook Introduction, which was read at the meeting. As stated in the handbook, the site is the home base that serves solely as a "meeting place" and provides access to "transportation services". Therefore, not only have you altered John's program, you have interfered with the Orchard Academy programming and delivery of services as is provided to other students, as was previously agreed upon, and as was stipulated in the ETHS contract with Orchard Academy. We have not received any written notification explaining why the placement was changed, how that change was determined to be in John's best educational interests, and why John is not permitted to participate in the Intensive Program at Orchard Academy. We demand immediate compliance with the regulations and the IDEA. The



PLAINTIFF'S EXHIBIT B

proper program description must be sent to Orchard Academy for immediate implementation and the invalid document removed from John's ETHS student record file.

Until such time as John's entire program is reinstated, we will provide at our own expense the portion of John's educational program that you discontinued so that his education is not interrupted and his progress is not impeded. This includes all of the associated support services that are listed in his program from last year and that had previously been provided by Orchard Academy. We may seek reimbursement for all costs we incur because this placement is necessary to provide John with a FAPE. This does not preclude any other remedies we may seek for this severe violation of John's rights.

As stated in the afore-mentioned correspondence, we believe your actions have been to the detriment of John's progress and substantially alter the direction of the assessments that Orchard Academy was expected to conduct. It was specifically stated that Orchard Academy was to develop comprehensive transition goals. As stated in Ms. Whitten's recent letter, John is no longer in an educational program nor working on individualized goals. He is participating in group goals such as "grocery shopping, price comparison, being able to pick products from the shelves...etc.". This was not part of John's previous educational program and participation in these activities is not necessary to conduct an objective assessment in all areas of functioning. We did not give consent for John to participate in these activities *in lieu* of attending appropriate post-secondary educational, recreational and vocational activities that were outlined in the last valid IEP and the documents that John prepared describing his future goals. We gave consent for John to participate in these *non-individualized* activities *in addition to* the pursuit of the goals in his last valid IEP. John's previous program included curriculum-based goals, as opposed to task-specific goals, and therefore are applicable in his current post-secondary educational program.

It now appears that Orchard Academy has found they are unable to deliver John's program as outlined in the description of John's program from the 2008-2009 school year and as required in the settlement agreement. If this is the case, the appropriate action was not to arbitrarily alter John's program at Orchard Academy. OA was required to conduct *individualized* assessments of John, not observations based on participation in their program. The latter is conducted after placement and, while relevant to John's programming this year, is not part of the comprehensive assessment required for the upcoming IEP meeting. Ms. Whitten has stated that OA is "unable to deliver its transition programming and services due to the parents' non-cooperation". However, we never gave consent for John to be part of the OA general transition programming; his services were to be individualized. OA's desire to implement only their standard program and its associated services in its entirety represents a change in placement and OA does not have the authority to change John's placement until an IEP meeting is held. They were contracted to deliver John's individualized program and to conduct assessments to help develop appropriate transition goals and services. If OA feels they are unable to complete the assessment, it is not because *the parents* have impeded the process.

Sincerely,

Christine Yuelys-Miksis

Michael Miksis

**Student Name:** JOHN MIKSIS          **Date:** 5/15/2009

**TRANSITION PLAN**          **ID:** 606492

Directions: A Transition Plan must be completed on every special education student 14 years of age or older as part of the IEP Conference. A Transition Plan may be developed for younger students at the discretion of the IEP Conference participants.

**Vision Statement**     Informant: [X] Student    [X] Parent    [ ] Other

John has stated that he would like to attend college. He would like to work in an office using computers or in a preschool. John would like to live in an apartment after high school and would like to learn to travel in the community independently. He enjoys Boy Scouts, swimming, and sporting events.

| Considered Post High School Goals | | Recommended Transition Services | |
|---|---|---|---|
| **1. Post-Secondary Education/Training Goals** | | **1. Services** | |
| Technical/Trade School | [ ] | Special Education College Night | [ ] |
| Community College | [X] | ACT/SAT | [ ] |
| Four-Year University | [ ] | Visit Campus/Training Program | [ ] |
| Adult Education | [ ] | Financial Aid Planning | [ ] |
| Apprenticeship/on the job training | [ ] | College Placement Test | [ ] |
| Continuing Education Classes | [ ] | Skill Instruction | [X] |
| Community Rehabilitation Training | [ ] | reading, writing | |
| Developmental Training Program | [X] | Academic Training | [ ] |
| Other: | | | |
| | | Domestic Skills Instruction | [ ] |
| | | Community Skills Training | [ ] |
| **2. Employment Goals** | | | |
| Employment Following Post secondary Education | [ ] | Medical Needs/Therapies | [ ] |
| Competitive Employment | [X] | Assistive Technology/Assistive Devices | [ ] |
| Supported Employment | [ ] | | |
| Military | [ ] | | |
| Other: | | **2. Prevocational Services** | |
| | | Work Study Class | [X] |
| | | Job Placement Assistance | [X] |
| **3. Community Living Goals** | | On-the-Job Training | [X] |
| House or Apartment | [X] | Career Counseling | [X] |
| Live with Parents or Relatives | [ ] | Job Coaching | [X] |
| Community Residential | [ ] | Orientation and Mobility Training | [X] |
| Group Home | [ ] | Transition Fair | |
| Nursing Facility | [ ] | Applied Technology Class | [X] |
| Other: | | Vocational Evaluation | [X] |
| | | Referral to DHS/ORS | [X] |
| | | Date Certified: | [ ] |
| **Anticipated Graduation Year** | 2012 | **3. Community Living Services** | |
| | | Referral to Service Provider | [X] |
| **Number of Credits Earned Toward Graduation:** | | DRS | |
| | | Home Services (DHS/ORS) | [ ] |
| | | Respite Services | [ ] |
| **IEP Manager:** Steidley | | | |
| | | Recreational/Leisure Services | [X] |
| | | Center for Independent Futures | |

Page 6A

PLAINTIFF'S EXHIBIT C